[No. 1018.  Decided December 13, 1893.]

WILLIAM P. HARPER, *Respondent,* v. JOSEPH F. SINCLAIR, *Appellant.*

PRINCIPAL AND AGENT — UNDISCLOSED PRINCIPAL — EVIDENCE — NON-SUIT.

Where it is sought to charge defendant as an undisclosed principal with liability for the purchase of certain mill machinery bought by one in possession of mill property under a lease from the defendant, plaintiff should be non-suited, when there is no evidence showing that the mill was operated by defendant, or by the lessee as his agent, and the only evidence tending to show a promise to pay for the machinery was that "when they should get rid of Hight (the lessee), and get straightened out, they would pay all the bills, and that they should not want the mill incumbered by them."

*Appeal from Superior Court, King County.*

*Turner & McCutcheon,* for appellant.

*C. E. Bowman,* and *Stratton, Lewis & Gilman,* for respondent.

The opinion of the court was delivered by

SCOTT, J.—This action was brought by respondent to recover the purchase price of certain mill machinery. The

appellant obtained possession of a sawmill, logging boom, etc., formerly belonging to the Salmon Bay Lumber Company, by redeeming the same from a judicial sale, and on the 13th of April, 1892, he leased the same to one Hight, at the stated annual rent of $2,000, by virtue whereof Hight was to take good care of the property, and was not to suffer the same to be attached or levied on to satisfy any judgment which might be recovered against him by any person other than the lessor, his heirs or assigns. A further agreement was entered into between said parties upon said day, wherein it was stated that appellant had obtained said property by virtue of such redemption at a cost to him of $2,500, and had expended about $500 additional thereon, and recited the fact that he had that day leased said property to said Hight for a term of one year, at a yearly rental of $2,000. And further, that it was understood that said Hight had contributed nothing to said redemption, but that he had become personally indebted for some part of the expenses incurred in the erection of a dry house, and that said redemption was made and said dry house erected under an agreement between said parties that in the event Sinclair should become the owner thereof (in case the property should not be redeemed from him) he would sell and convey an undivided one-half of said property to Hight upon payment to him by Hight of one-half of all expenditures made or to be made by him to acquire title thereto, with interest thereon at ten per cent., and that the amount of rent stipulated in said lease was not $2,000 per annum, but was $1,000 per annum, and that all payments made by Hight on account of rent, in excess of the sum of one thousand dollars, should be received by Sinclair as Hight's contribution towards the payment of the sums advanced, or which might be advanced, by Sinclair in and about the acquisition of the title to said property, and that Hight should become

entitled to a conveyance as above specified when he should have fully paid his one-half of all such sums so advanced and paid, or to be advanced and paid, by Sinclair.

After the execution of these agreements Hight took possession of the property and conducted a milling business. The merchandise aforesaid was sold and delivered by Robert G. Westerman and Westerman & Yeaton and J. Hutton & Son to said Hight. It was not known then by any of these parties that appellant was the owner of the property, or had any interest therein, and it appears that the goods were sold by them to Hight individually, and they subsequently assigned their claims to the respondent, who had previously held them for collection, and who, upon learning of Sinclair's connection with the property, sought to charge him as an undisclosed principal, claiming that Hight had made said purchases as his agent. A jury trial was had, and verdict and judgment rendered in favor of the plaintiff, whereupon defendant appealed.

A number of points are raised, only one of which it will be necessary to notice. At the conclusion of the plaintiff's case the defendant moved for a non-suit on the ground that the evidence was insufficient to support a recovery, which motion was denied. After an examination of the evidence, we are of the opinion that the motion should have been granted. There is nothing to show that appellant was in anywise interested in the management of the mill or in the milling business which Hight was conducting while in possession under the lease. The parties selling the merchandise aforesaid had sought to charge the property with liens therefor, which liens showed that the sales had been made to Hight. It is contended that appellant subsequently assumed the liability for Hight's indebtedness and agreed to pay the claims in question, but the evidence fails to support this contention. This claim is based upon cer-

tain conversations had with appellant wherein he was re-
quested to pay the bills.    In none of these did he admit
an individual liability, although it appears that he said
upon a number of occasions that the bills would be paid.
The plaintiff testified that Sinclair told him that "when
they should get rid of Hight, and get straightened out,
that they would pay all the bills, and that they should not
want the mill encumbered by them, and did not want me
to be dunning them for them."    There is no testimony in
the record stronger than this upon which the contention
aforesaid could be based.    It appears that the machinery
which was purchased was necessary for the operation of
the mill, but this of itself would not tend to establish any
liability as against Sinclair.    It is not claimed that this
so-called promise of appellant was made upon any consid-
eration so as to be binding of itself, but it is claimed that
it is evidence of an original liability, and under some cir-
cumstances, or if unexplained, a promise to pay might be
evidence of a previous or existing liability, but under the
uncontradicted evidence introduced previous to the making
of the motion for a non-suit, it appears that Sinclair with
others had contemplated making some sort of an agreement
with Hight whereby they would take certain property of
him, and Hight claimed that a part of the consideration
therefor was that they were to protect him against these
claims, not that they agreed to pay them.    In fact he says
that Sinclair expressly refused to become liable for them
so the creditors could enforce payment against him, but
told him that they would buy them in, claiming that Hight
had been charged too much for such machinery and that
the claims could be bought at greatly reduced prices.

It also appears from the plaintiff's testimony that Sin-
clair denied being liable on said claims in any way, and
that he expressly refused to O. K. the bills, or to enter

into any agreement in writing to pay the same, although the plaintiff contends that Sinclair in fact orally admitted his liability therefor, and agreed to pay the same, but in stating what was said he related what is above set forth. In this it will be noticed that appellant did not make any individual promise to pay, but simply said that when they got rid of Hight, and got matters straightened up, they would pay all the bills. And in the light of what was subsequently shown as to how this statement came to be made it amounted to nothing more than a mere scintilla of evidence of an original or existing liability, and one which would be insufficient to support a verdict. It appeared that appellant had said to Hight that if he was unable to purchase the necessary machinery he might help him to procure the same by endorsing or otherwise, but there is an entire absence of testimony in the record to show any liability of appellant upon the claims in question, and for that reason the motion for a non-suit should have been granted.

Reversed, and remanded with direction to enter judgment of non-suit.

HOYT, ANDERS and STILES, JJ., concur.

DUNBAR, C. J., dissents.